FILED

2021 Jul-20  PM 05:31
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NUMBER:** |
| **v.** | ) | |
| | ) | **2:21-CV-00871-ACA** |
| **SAMFORD UNIVERSITY;** | ) | |
| **MALLORY KRUNTORAD; and** | ) | |
| **TIM S. HEBSON, Ed.D.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT, PRELIMINARY AND PERMANENT INJUNCTION (DOC. 4)</u>

**James C. Pennington (ASB-1287-N62J)**
**Amy Quick Glenos (ASB-2345-C66A)**
OGLETREE, DEAKINS, NASH, SMOAK
    & STEWART, P.C.
**420 20th Street North, Suite 1900**
**Birmingham, AL 35203**
**Telephone: 205.328.1900**
**Facsimile: 205.328.6000**
james.pennington@ogletree.com
amy.glenos@ogletree.com

**Attorneys for Defendant Samford University, Mallory Kruntorad, and Tim S. Hebson, Ed.D.**

## **<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION ..........................................................................................1

II.     LEGAL STANDARD ....................................................................................1

III.    ARGUMENT...................................................................................................2

      A.      Plaintiff Cannot Establish A Substantial Likelihood He Will Prevail

             On The Merits. .......................................................................................2

           1.      Plaintiff's Erroneous Outcome Claim is Without Merit.............2

                     a.      Plaintiff cannot cast articulable doubt on the outcome of

                          the disciplinary proceeding.................................................3

                     b.      Plaintiff cannot demonstrate a plausible inference of

                          gender bias. .......................................................................5

                     c.      Plaintiff cannot establish a causal connection between the

                          alleged gender bias and erroneous outcome....................8

              2.      Plaintiff's Selective Enforcement Claim is Without Merit. .......8

              3.      Plaintiff's Breach of Contract Claim is Without Merit. .............9

                     a.      Plaintiff cannot establish the existence of a contract. ......9

      B.      Disclaimer of Contract ......................................................................11

           1.      Plaintiff cannot establish that Samford breached any such

                 contract...............................................................................13

2.    Plaintiff's Breach of Implied Covenant of Good Faith and Fair
      Dealing is Without Merit. ..........................................................15

3.    Plaintiff's Negligence Claim is Without Merit.........................16

C.    Plaintiff Cannot Establish He Will Suffer Irreparable Injury If The
      Injunction Is Not Issued. ....................................................................20

D.    Plaintiff Cannot Establish That Any Threatened Injury Outweighs The
      Harm An Injunction Would Cause Samford.......................................25

E.    Plaintiff Has Failed To Show That Public Interest Will Not Be
      Disserved By A Grant Of The Preliminary Injunction. ....................31

IV.   CONCLUSION..............................................................................................32

COME NOW Defendants Samford University, Mallory Kruntorad, and Tim S. Hebson, Ed.D. ("Defendants") and submit the following in opposition to Plaintiff's Motion for Declaratory Judgment, Preliminary and Permanent Injunction ("Motion") (Doc. 4) as follows:

## I.   INTRODUCTION

Plaintiff, a suspended student at Samford University ("Samford" or the "University"), requests that this Court enter an order granting him declaratory and injunctive relief, specifically to declare discipline imposed on him as unlawful and allow him to return to the University to complete his courses and eliminate from his academic record all references regarding the suspension.

"The preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983) (citations omitted).  Here, Plaintiff has not carried this heavy burden, and for the reasons set forth below, Plaintiff's Motion must be denied.

## II.   LEGAL STANDARD

To justify a preliminary injunction, a plaintiff must establish four pre-conditions:  (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a showing that plaintiff will suffer irreparable injury if an injunction does not issue, (3) proof that the threatened injury to plaintiff outweighs any harm that might result

to the defendants, and (4) that the public interest will not be disserved by grant of a preliminary injunction. *Cunningham v. Adams*, 808 F.2d 815, 819 (11th Cir. 1987). "The preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant 'clearly carries the burden of persuasion' as to the four prerequisites. 'The burden of persuasion in all of the four requirements is at all times on the plaintiff.'" *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983) (citations omitted). A preliminary injunction is the "exception rather than the rule." *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1210 (11th Cir. 2003).

### III.    ARGUMENT

#### A.    Plaintiff Cannot Establish A Substantial Likelihood He Will Prevail On The Merits.

##### 1.    Plaintiff's Erroneous Outcome Claim is Without Merit.

As more fully set forth in Defendants' Motion to Dismiss, the erroneous outcome standard has not been adopted by the Supreme Court or the Eleventh Circuit. This alone defeats Plaintiff's claim. However, even if this Court were to accept the erroneous outcome standard, Plaintiff's claim still fails.

Plaintiffs alleging erroneous outcome must allege that they were "innocent and wrongly found to have committed an offense and there is a causal connection between the flawed outcome and the gender bias." *Doe v. Valencia College*, 903 F.3d 1220, 1236 (11th Cir. 2018) (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d.

Cir. 1994) (internal quotations omitted)). Specifically, the plaintiff must allege facts sufficient to: (1) "cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding;" (2) support a plausible inference of gender bias; and (3) establish a causal connection between the alleged gender bias and the erroneous outcome. *Yusuf*, 35 F.3d at 715 (explaining that the plaintiff in an Erroneous Outcome case is "innocent" but "wrongly found to have committed an offense" due to gender bias). Here, Plaintiff has not alleged any facts to cast legitimate doubt on the accuracy of the outcome of Samford's Title IX process, to support a plausible inference of gender bias, or to establish a connection between the alleged gender bias and the outcome of his case.

> ### a. Plaintiff cannot cast articulable doubt on the outcome of the disciplinary proceeding.

Here, Plaintiff identifies various questions that the investigator never asked Jane Roe during the underlying investigation.[1] (Doc. 1, ¶¶ 134, 169). Plaintiff also

---

[1] Plaintiff fails to mention that *he* had the opportunity to ask that question through his advisor during cross-examination of the complainant at the hearing. "At the live hearing, each party's advisor will be permitted to ask the other party and any witnesses all relevant questions and follow-up questions, including those challenging credibility. Such questions will be conducted directly, orally, and in real time by the party's advisor and will never be conducted by a party personally." (Doc. 1-1 p. 35 § IX.L.1.(c); *See also* p. 22 § VIII.I.4) The Policy provides consequences for failure to answer such questions: "[I]f a party is not willing to answer all relevant questions from the other party's advisor, the Title IX Hearing Panel will not be able to rely on any statement of that party in reaching a determination regarding responsibility." (Doc. 1-1 p. 23 § VIII.L.3.) The very source of the allegation that the investigator did not ask the question that Plaintiff wanted to be answered is the hearing in which Plaintiff's advisor had the opportunity to ask the question. (Doc 1 ¶¶ 167-169) Plaintiff fails to show how he was harmed by the investigator's failure to ask a specific question when he had the opportunity to ask it and apparently availed himself of that opportunity.

alleges that Samford "rushed" the investigation and erred by finding Jane Roe more credible. (*Id.* ¶ 149). Essentially, Plaintiff is requesting that this Court find that the investigation was not proper and that Samford's credibility determinations were wrong. But that is exactly what a Court is *not* to do. A court's review of the outcome of an institution's disciplinary process is limited. "[T]he law does not allow th[e] court to retry the University's disciplinary proceeding." *Doe v. University of the South*, 687 F. Supp. 2d 744, 755 (E.D. Tenn. 2009). When reviewing the institution's disciplinary proceedings, the court "may not advocate for best practices nor . . . retry disciplinary proceedings." *Saravanan v Drexel Univ.*, No. 17-3409, 2017 WL 5659821 at *4 (E.D. PA Nov. 24, 2017). The court must not make an independent determination of what happened between the students or who is more credible. *Doe v. University of the South*, 687 F. Supp. 2d at 755; *see also Z.J. v. Vanderbilt University*, 355 F. Supp. 3d 646, 697 (M.D. Tenn. 2018) (collecting cases). "Importantly, it is not within the purview of a district court to second-guess a university's credibility determinations and overall evaluation of the evidence." *Doe v. Vassar Coll.*, No. 19-CV-9601 (NSR), 2019 WL 6222918, at *8 (S.D.N.Y. Nov. 21, 2019) (citing *Yu*, 97 F. Supp. 3d at 462).

Accordingly, this alone defeats Plaintiff's claim.

**b.   Plaintiff cannot demonstrate a plausible inference of gender bias.**

Assuming Plaintiff alleged facts sufficient to cast doubt on the outcome of Samford's extensive Title IX proceedings finding him responsible for sexual assault, he cannot demonstrate a plausible inference of gender bias.  To support his claim that Samford demonstrated gender bias, Plaintiff relies on Samford's sexual assault prevention efforts and two purported examples of gender bias in the investigation. But none of this demonstrates gender bias.

Plaintiff first broadly alleges Samford has instituted various campaigns and initiatives aimed at preventing sexual assault on campus and that these "campaigns and initiatives show a fear of criticism and a stark preference towards victims of sexual assault."  But sexual assault awareness policies and events do not demonstrate gender bias.  Rather, they are "legitimate preventative education programs and resources that [the Department of Education Office for Civil Rights] has explicitly instructed universities to provide for survivors and victims of all genders."  *Doe v. Columbia Coll. Chi.*, 299 F. Supp. 3d 939, 955 (N.D. Il. 2017).

Further, Plaintiff's reliance on three specific statements attributable to Samford are equally unhelpful. Plaintiff points to a news article released in conjunction with the "It's On Us" campaign, which states, "'One in 12 college-age

men admit having fulfilled the prevailing definition of rape or attempted rape.'"[2]  But this is just one line out of a full paragraph of statistics surrounding sexual assault.  In fact, the very next line discusses that 75 percent of men and 55 percent of women involved in acquaintance rapes were drinking or taking drugs just before the attack.[3]  Plaintiff next points to a graphic that accompanies the showing of the film, "Nevertheless."[4]  Specifically, Plaintiff notes that the graphic includes a statistic that 1 of every 6 women has been the victim of rape or attempted rape.  Plaintiff conveniently leaves out that the *very next line* states that "1 out of every 10 rapes happen to males."  Plaintiff's characterizations are completely disingenuous.  These statements hardly show an anti-male bias, and Plaintiff is not allowed to alter or omit the context to change the meaning.

Plaintiff then cites the "most telling" piece of evidence that purportedly demonstrates Samford's anti-male bias—a quote from a magazine article in which Samford announced that the "well-being of the *complainant* is paramount."[5] (emphasis added). But simply exhibiting a preference towards victims of sexual

---

[2] The article to which plaintiff refers cannot properly be attributed to Samford. The article appears on the website of the student newspaper of the University of Alabama at Birmingham. It merely mentions that UAB, Samford and Birmingham-Southern College  jointly sponsored an event "to remove stigma from the victims of sexual assault on college campuses." https://www.uab.edu/studentmedia/kaleidoscope/news/473-usga-kicks-off-the-it-s-on-us-initiative
[3] *Id.*
[4] https://www.thesamfordcrimson.com/2021/04/20/nevertheless-film-and-panel-preview/
[5] https://issuu.com/samford_university/docs/2019-20_marketing_inside_su_august_final-single-pa

assault is not indicative of gender bias. Such allegations "may support a finding of a lawful pro-victim bias, but they do not support an inference of unlawful gender bias." *Ruff v. Board of Regents of University of New Mexico*, 272 F. Supp. 3d 1289, 1302 (D. N.M. 2017). "[C]onclusory allegations of gender bias, unsupported by even minimal data, credible anecdotal references, or the purported presence of external pressures, are insufficient to support a plausible erroneous outcome claim." *Z.J.*, 355 F. Supp. 3d at 682.

Finally, Plaintiff contends that Jane Roe received preferential treatment during the Title IX investigation.  Assuming *arguendo* that there were differences in the investigatory process, which Samford denies, such flaws are not sufficient to support gender bias.  *Doe v. Princeton*, 2020 WL 2097991, *5 (D. N.J. May 1, 2020) (finding that even if the complainant and respondent were treated differently throughout the investigation, such is not enough to state a Title IX claim); *see also Doe v. Louisiana State Univ.*, No. CV 20-00379-BAJ-SDJ, 2020 WL 4193473, at *5 (M.D. La. July 21, 2020) (finding the plaintiff's bald assertions that Jane Roe received preferential treatment unavailing). Because Plaintiff cannot demonstrate that Samford demonstrated gender bias, Plaintiff's erroneous outcome claim has no chance of succeeding.

### c. Plaintiff cannot establish a causal connection between the alleged gender bias and erroneous outcome.

Simply put, Plaintiff cannot establish a claim for erroneous outcome. Not only can Plaintiff not establish that the outcome was erroneous, he cannot articulate facts to demonstrate that gender bias was the reason for the wrong outcome. This is because the decision was not flawed, and there was no gender bias. Plaintiff can disagree with Samford's decision, but "the Court cannot now – absent a flawed process *and* gender discrimination – second-guess the panelists' credibility determinations and factual conclusions." *Yu*, 97 F. Supp. 3d at 462 (emphasis in original). Plaintiff's conclusory allegations are insufficient and fatal to his claim.

### 2. Plaintiff's Selective Enforcement Claim is Without Merit.

To state a claim for Title IX selective enforcement, Plaintiff must demonstrate that "a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender." *Doe v. Rollins College*, 352 F. Supp. 1205 (M.D. Fla. 2019) (citing *Doe v. Cummins*, 662 F. Appx. 437, 452) (6th Cir. 2016); *Mallory v. Ohio Univ.*, 76 F. Appx. 634, 641 (6th Cir. 2003) ("To support a selective enforcement claim," the male plaintiff must allege "that a female was in circumstances sufficiently similar to his own and was treated more favorably by the University"); *Yusuf*, 35 F.3d at 715 (if the plaintiff is male, these claims require the plaintiff to allege that a female accused of similar sexual misconduct was treated preferentially by the university).

Plaintiff cites to alleged unequal treatment of Plaintiff and Jane Roe – the complainant in the underlying investigation – to support his claim.  But Plaintiff overlooks one very important fact: Plaintiff and Jane were not similarly situated. Plaintiff needs to point to a female respondent, not a complainant. Plaintiff broadly alleges in his Complaint that males would be "treated differently than a female would be treated if accused of a similar offense." (Doc. 1, ¶ 222).  But Plaintiff includes no factual support for this allegation.  This is fatal to Plaintiff's claim.  *Mancini v. Rollins Coll.*, 2017 WL 3088102, *7 (M.D. Fla. July 20, 2017) ("Here, the Complaint includes no reference to the necessary comparator; accordingly, Plaintiff has not alleged facts sufficient to state a plausible Selective Enforcement claim.").

### 3.    Plaintiff's Breach of Contract Claim is Without Merit.

To establish a breach of contract claim under Alabama law, Plaintiff must demonstrate (1) a valid contract binding the parties, (2) plaintiff's performance under the contract, (3) defendant's breach, and (4) resulting damages.  *State Farm Fire & Cas.co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999).   Plaintiff's breach of contract claim will not be successful because Plaintiff cannot establish the existence of a contract or that Samford breached any purported contract.

### a.    Plaintiff cannot establish the existence of a contract.

An essential element of a breach-of-contract claim in Alabama is the existence of "a valid contract binding the parties." *Reynolds Metals Co. v. Hill*, 825 So.2d 100,

105 (Ala. 2002).  "The requisite elements of [a valid contract] include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Avis Rent A Car Sys., Inc. v. Heilman*, 876 So. 2d 1111, 1118 (Ala. 2003) (internal quotations and citations omitted).

Plaintiff contends it is undisputed that Plaintiff and Samford were party to a valid contract, claiming that Alabama courts have generally noted that there is a contractual relationship between a student and a private college. (Doc. 4, p. 17). Plaintiff is wrong on the facts and the law. It is not an automatic that a contract exists. Plaintiff exaggerates that Alabama courts have "generally noted" the contractual relationship. In *Craig v. Forest Inst. of Prof'l Psychology*, 713 So. 2d 967, 973–74 (Ala. Civ. App. 1997), the Court of Civil Appeals noted that there "is no Alabama case directly on point" and then cites a Seventh Circuit case, which notes that "the 'basic legal relation between a student and a private university or college is contractual in nature.'"  713 So. 2d 967, 973 (Ala. Civ. App. 1997) (*quoting Ross v. Creighton Univ.*, 957 F.2d 410, 416–17 (7th Cir.1992)). Certainly, a university and a student may enter into a contract; but no decision by the Alabama Supreme Court has ever recognized any college disciplinary procedure as constituting a contract. Furthermore, *Craig* recognized that a contract disclaimer may preclude the existence of a contract between a student and university. Unlike in *Craig*, however, Samford's contract disclaimer was clear, unambiguous, and applies specifically to the *only*

document that Plaintiff alleges to constitute a contract – Samford's Sexual Misconduct Policy ("Policy")

Doe alleges that the Policy, which he attached as Exhibit 1 to the Complaint, created the terms of the binding contract. (Doc. 1, ¶ 226). Prominently displayed in the body of the contract is a disclaimer making clear to any reader that the Policy is not a contract:

### B.   Disclaimer of Contract

This Policy does not constitute a contract between Samford, on the one hand, and any student, employee, contractor, agent or other person, on the other, and none of the provisions of this Policy shall be construed as or deemed to be contractual in nature.

(Doc. 1-1, p. 2). Alabama has long recognized that contract disclaimers prevent statements of policy or practice from being construed as contracts. *See*, *e.g.*, *Abney v. Baptist Medical Centers*, 597 So. 2d 682, 683 (Ala. 1992). When there is an express disclaimer, the document cannot reasonably be construed to constitute an enforceable contract. *Hanson v. New Technology*, 594 So. 2d 96, 99 (Ala. 1992). When a document contains a clear contract disclaimer, the document as a matter of law does not create a contract. *Sisk v. Marriott's Grand Hotel*, No. 92-0498-AH, 1993 WL 652791, *4 (S.D. Ala. Apr. 12, 1993).

In *Carr v. Bd. Of Regents of Univ. Sys. Of Ga.*, 249 Fed. Appx. 146 (11th Cir. 2007), the student plaintiff alleged breach of a contract based on the university catalog. The catalog contained the statement that it was for "informational purposes

only and should not be construed as the basis of a contract between a student and [the Board]." *Id*. at 151. The Eleventh Circuit affirmed dismissal of the claim, holding that there was "no evidence from which a reasonable jury could conclude that the undergraduate catalog formed a binding, written contract." *Id*; *see also Breyer v. Pacific University*, No. 3:17-cv-00036-AC, 2020 WL 1161434, at *38–39 (D. Or. March 10, 2020) (Holding that a disclaimer stating the catalog was "for informational purposes only and does not constitute an agreement or contract between . . . University and students, staff, or faculty" precluded the formation of a contract.)

Plaintiff has picked apart the Policy to identify all the procedures he likes. (Doc. 1, ¶¶ 36-69). He fails, however, to cite or quote the provision of the Policy explicitly stating that the document does not constitute a contract between Samford and any student and that none of its provisions may be construed as contractual in nature. Plaintiff is not permitted to pick and choose portions of the document that he wants to enforce as a contract, while ignoring the parts of the document that defeat his claim.

Even absent a specific contract disclaimer, language allowing a party unilaterally to modify the document renders it insufficiently specific and definite to constitute a contract. *Stinson v. American Sterilizer Co.*, 570 So.2d 618, 621 (Ala. 1990). Section XIII. B. of the Policy gives the exclusive right to Samford's Board of

12

Trustees and other University officials to modify the policy. A document that gives one party exclusive right to modify it at will does not create a contract providing enforceable rights upon another party.

This outcome is consistent with the approach of courts analyzing similar contract claims. Courts generally do not recognize generally-applicable student discipline policies as binding contracts. *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 587–88 (E.D. Va. 2018) ("A university's student conduct policies are not binding, enforceable contracts . . . .); *Jackson v. Liberty Univ.*, No. 6:17-CV-00041, 2017 WL 3326972, *5–7 (W.D. Va. Aug. 3, 2017) (dismissing plaintiff's breach of contract claim where the alleged contract was the university's student handbook and sexual assault policies); *Doe v. Wash. & Lee Univ.*, No. 6:14-CV-00052, 2015 WL 4647996, at *11 (W.D. Va. Aug. 5, 2015) (same); *see also Doe v. Columbia College Chicago*, 299 F. Supp. 3d 939, 960–62 (N.D. Ill. 2017) (statements in a handbook were not "unambiguous promises").

Because he has failed to allege facts showing the existence of a contract in the first place, Plaintiff's allegations alleging violations of the policy do not support a breach of contract claim.

### 1.   Plaintiff cannot establish that Samford breached any such contract.

Assuming *arguendo* that a valid contract exists, Plaintiff still would not succeed on a breach of contract claim because Plaintiff cannot establish that Samford

breached the contract.  In his Motion, Plaintiff contends that Samford violated its Policy in ways which amount to Plaintiff believing the investigation was "unfair." (Doc. 1 ¶ 230). But this is not sufficient to establish a breach.

Indeed, "it is not the Court's role to conduct a 'sufficiency-of-the-evidence'" review of the school's findings. *Doe v. American Univ.*, 19-cv-03097(APM), 2020 WL 5593909, at *16 (D.D.C. Sept. 18, 2020) ("As framed, Doe's theory of breach amounts to a demand that the court conduct a sufficiency-of-the-evidence, appellate-style review of [the school's] findings, which it cannot do."); *see also Univ. of the South*, 687 F. Supp. 2d at 755 (stating that it is not for the courts to review "whether a sexual assault occurred, whether any such acts were consensual, or who, as between John Doe and the Complainant is credible"). Accordingly, "the Complaint cannot—and does not—state a breach of contract claim upon which relief can be granted insofar as it alleges that Defendant failed to provide a 'fair' investigation or 'fair' hearing without identifying some other, specific provision in the [Sexual Misconduct Policy] that was allegedly breached." *Doe v. Trs. of the Univ. of Pa.*, 270 F. Supp. 3d 799, 812 (E.D. Pa. 2017); *see also Prasad v. Cornell Univ.*, No. 5:15-cv-322, 2016 WL 3212079, at *20 (N.D.N.Y. Feb. 24, 2016) ("The Amended Complaint appears to indicate that Cornell breached a general agreement to provide Plaintiff an impartial and timely disciplinary hearing, but it is not the Court's function to speculate what Plaintiff intended. Because Plaintiff does not specify what

agreement Defendant violated, and how it was violated, Plaintiff's breach of contract claim must be dismissed.").

### 2. Plaintiff's Breach of Implied Covenant of Good Faith and Fair Dealing is Without Merit.

Plaintiff's claim for breach of implied covenant of good faith and fair dealing has no chance of succeeding on the merits because Alabama does not recognize an independent cause of action for the breach of duty of good faith and fair dealing outside the insurance policy context. *Wallace v. SunTrust Mortg., Inc.*, 974 F. Supp. 2d 1358, 1368 (S.D. Ala. 2013) (citing *Lake Martin/Alabama Power Licensee Ass'n, Inc. v. Ala. Power Co., Inc.*, 601 So. 2d 942, 944–145 (Ala. 1992) ("there is no contractual cause of action for breach of an implied duty of good faith that nebulously hovers over the contracting parties") (quoting *Tanner v. Church's Fried Chicken, Inc.*, 582 So. 2d 449, 451 (Ala. 1991)) ("We are not prepared to extend the tort of bad faith beyond the area of insurance policy cases."); *see also Kennedy Electric Co. v. Moore–Handley, Inc.*, 437 So. 2d 76, 81 (Ala. 1983) (declining to extend "the tort of bad faith beyond the area of insurance policy cases . . . .").

In support of his argument, Plaintiff cites *Lloyd Noland Found., Inc. v. City of Fairfield Healthcare Auth.*, but this case does not provide an independent cause of action. Rather, it instructs as follows:

> "Where a contract fails to specify all the duties and obligations intended to be assumed, the law will imply an agreement to do those things that according to reason and justice the parties should do in order to carry

15

out the purpose for which the contract was made." *Sellers v. Head*, 261 Ala. 212, 217, 73 So. 2d 747, 751 (1954). "'There is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract; ... in every contract there exists an implied covenant of good faith and fair dealing.'" *Id*.

837 So. 2d 253, 267 (Ala. 2002).  This case does not provide a cause of action, but rather instructs that a covenant of good faith and fair dealing is implied when a contract does not specify all duties and obligations.

Furthermore, since the asserted obligation of good faith arises as part of a contract, there can be no valid claim for breach of that duty where no contract exists. *Wyant v. Burlington Northern Santa Fe R.R.*, 210 F. Supp. 2d 1263 (N.D. Ala. 2002); *see also Jackson v Cintas Corp.*, 391 F. Supp. 2d 1075, 1102 (M.D. Ala. 2005) ("[Plaintiff's] claim for breach of implied covenant of good faith and fair dealing . . . fails based on the absence of a contract . . . ."). Accordingly, Plaintiff cannot succeed on this claim.

### 3.    Plaintiff's Negligence Claim is Without Merit.

To establish a negligence claim in Alabama, the plaintiff must prove (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff suffered a loss or an injury; and (4) that the defendant's negligence was the actual and proximate cause of that loss or injury. *Ford Motor Co. v. Burdeshaw*, 661 So. 2d 236, 238 (Ala. 1995). The Alabama Supreme Court defines negligence as "the failure to do what a reasonably prudent person would have done under the same

16

or similar circumstances." *Id.* (citing *Elba Woods Prods., Inc. v. Brackin*, 356 So. 2d 119, 122 (Ala. 1978)).  Here, Plaintiff's claim will not be successful for several reasons.

In his Motion, Plaintiff asserts that Samford breached its duty of providing Plaintiff with a fair investigative process. (Doc. 4, p. 20).  Specifically, Plaintiff contends that Defendants failed to provide him with proper notice of allegations, failed to question Jane on her "shifting narratives," failed to question Jane's credibility, failed to consider his evidence, failed to "conduct an unbiased and impartial Title IX investigation," failed to investigate evidence, and failed to provide a rationale for its sanctions, all of which, Plaintiff claims, is a violation of his rights under Samford's policies. *Id.*

This is a mere re-casting of his contract claim based on Samford's Sexual Misconduct Policy.  But "Alabama does not recognize a tort-like cause of action for the breach of a duty created by a contract." *Blake v. Bank of Am., N.A.*, 845 F. Supp. 2d 1206 (M.D. Ala. 2012). "[A] mere failure to perform a contractual obligation is not a tort." *Gustin v. Vulcan Termite & Pest Control, Inc.*, ___ So. 3d ___, No. 1190255, 2020 WL 6372814 (Ala. Oct. 30, 2020) (quoting *Barber v. Business Prods. Ctr., Inc.*, 677 So. 2d 223, 228 (Ala. 1996) (overruled on other grounds by *White Sands Group, L.L.C.*, 32 So. 3d 5, 14 (Ala. 2009). *See also Buckentin v SunTrust Mortg. Corp.*, 1273 (ND. Ala. 2013) (holding that because "the duty Defendant

allegedly breached is based on a contract, and because Alabama law does not permit Plaintiff to assert a tort claim against Defendants for their purported breach of a contract, both Plaintiffs' negligence and wantonness claims are not actionable under Alabama law." 928 F. Supp. 2d at 1290. *See also Mesmer v. Md. Auto. Ins. Fund*, 353 Md. 241, 252, 725 A.2d 1053, 1058 (1999) ("A contractual obligation, by itself, does not create a tort duty. Instead, the duty giving rise to a tort action must have some independent basis."). Since Alabama does not recognize a cause of action for negligent performance of an alleged contractual duty, Plaintiff cannot establish a negligence claim.

Furthermore, Plaintiff does not allege any other duty that Samford owed him that could support his claim.  Federal courts have consistently refused to impose a duty on universities or their employees to provide a "fair" or "impartial" hearing or investigation or a correct determination when state law has not explicitly recognized such a duty. For example, in *Doe v. Loyola University Maryland*, No. ELH-20-1227, 2021 WL 1174707 at *34 (D. Md. Mar. 29, 2021), the plaintiff claimed the university owed him a duty to conduct a Title IX hearing and investigation process "in a non-negligent manner and with due care to avoid arbitrarily dismissing students."  He alleged the university breached its duty by "implementing its Policy in a manner that is biased against the accused, failing to proceed with a presumption of innocence, and failing to implement the policy in a manner that would result in a fair process,

18

tilted to favor a particular outcome by not having a fair and neutral fact finder and panel member." *Id*. The court declined to create a new tort for negligent administration of a university sexual misconduct policy, holding, "to my knowledge, there is no Maryland law establishing the duty plaintiff claims Loyola breached. Moreover, I decline to recognize a new common law tort that has not been previously recognized by the Maryland Court of Appeals." *Id*. at *36.

Similarly, in *Doe v. Columbia Coll. Chicago*, the court found that the institution "does not owe a duty to its students 'relating to the implementation of student disciplinary proceedings.'" 299 F. Supp. 3d 939 (N.D. Ill. 2017), *aff'd*, 933 F.3d 849 (7th Cir. 2019), citing *Doe v. Amherst College*, 238 F. Supp. 3d 195, 228 (D. Mass. 2017). In *Doe v Marymount Univ.*, 297 F. Supp. 3d 573, 589–590 (E.D. Va. 2018), the court refused to recognize a Virginia negligence claim for breach of an alleged duty to be "be fair, especially considering the impact that school disciplinary proceedings can have on a student's life." Noting that other states had recognized such a duty, the court held: "this federal district court will not recognize a new common law tort that has not been previously recognized by the Supreme Court of Virginia or Virginia Court of Appeals." Likewise, Alabama has not recognized a duty of care by owed by private universities or their administrators to "ensure [a respondent] received a fair and impartial hearing process" (Doc. 1 ¶ 241).

19

Because Plaintiff cannot succeed on any of his claims, Plaintiff's Motion must be denied.

### C.  **Plaintiff Cannot Establish He Will Suffer Irreparable Injury If The Injunction Is Not Issued.**

The Eleventh Circuit has explained that "[a] showing of irreparable harm is 'the *sine qua non* of injunctive relief.'"  *Northeastern Florida Chapter of Ass'n of General Contractors of America v. City of Jacksonville, Florida*, 896 F.2d 1283, 1285 (11th Cir. 1990).  "To establish this element, a plaintiff must show that he has no adequate remedy at law, meaning that the injury must be actual and imminent, not remote and speculative, and requires a remedy of more than money damages." *Alverson v. Munchin*, No. 2:21-CV-16-ECM-KFP, 2021 WL 2096718, at *1 (M.D. Ala. Apr. 26, 2021), *report and recommendation adopted,* No. 2:21-CV-16-ECM, 2021 WL 2077799 (M.D. Ala. May 24, 2021) (citing *Westin v. McDaniel*, 760 F. Supp. 1563, 1569 (M.D. Ga.), *aff'd*, 949 F.2d 1163 (11th Cir. 1991)).

Here, Plaintiff's allegations of irreparable harm focus on three main points: (1) his lost opportunity to continue with his college education "coupled with the *possibility* that [he] may be unable to pursue meaningful educational opportunities elsewhere;" (2) a "*potential* future employer" not allowing him an opportunity to explain his academic record; and (3) being labeled a sex offender. (Doc. 4 pp. 21-22) (emphasis added).  But none of these constitute irreparable harm.

First, Plaintiff has been suspended—not expelled from Samford.  Thus, his academic career at Samford has been paused. Though no court in the Eleventh Circuit has discussed whether a suspension constitutes irreparable harm, several sister courts have found that suspensions and missing the opportunity to graduate on time do not constitute irreparable harm.  *See, e.g., Pierre v. Univ. of Dayton*, 143 F. Supp. 3d 703, 714 (S.D. Ohio. 2015) ("[C]ourts have also held that a suspension from school is not irreparable.") (citing *Medlock v. Trs. Of Ind. Univ.*, No. 1:11-cv-00977, 2011 WL4068453, at *9 (S.D. Ind. Sept. 13, 2011)); *Knoch v. Univ. of Pittsburgh*, No. 16-00970, 2016 WL 4570755, at *8, 2016 U.S. Dist. LEXIS 117081, at *27 (W.D. Pa. Aug. 31, 2016) (finding that an interruption in a student's education, while a "genuine injury, is not irreparable").

In fact, in *Montague v. Yale Univ.*, 2017 WL 4942772, *4 (D. Conn. Mar. 8, 2017), the court found that an *expulsion* did not constitute irreparable harm because if the plaintiff ultimately were to prevail in the litigation, he would be reinstated and could be adequately remedied by monetary damages. Here, Plaintiff is in a better position than Montague. He has not been expelled—he has merely been suspended. Thus, he does not need to prevail to be reinstated to Samford.  He can re-enroll and finish his degree at Samford once his suspension has ended if he so chooses. Additionally, in the event Plaintiff is successful on his claims, money damages

allowable under Title IX may compensate him for any loss of future earnings or tuition paid.

Further, Plaintiff certainly is not barred from transferring and obtaining his degree from another institution.  Admittedly, Plaintiff states that it is a "possibility" that he may be unable to pursue meaningful educational opportunities elsewhere. But the possibility of injury is the exact type of damage that does not constitute irreparable harm. Moreover, Plaintiff contends that transferring would require additional tuition, significant time and effort as he would be forced to make up non-transferrable credits that the transferring university would not accept. However, Plaintiff points to *no* college or university to which he has applied, been accepted, and been told that credits would not accepted.   At this juncture, Plaintiff's contentions are speculative at best, and courts routinely neglect to find irreparable harm on this basis alone.  *See Silman v. Utica Coll.*, No. 6:14-CV-0432, 2015 WL 365670, at *2 n.2 (N.D.N.Y. Jan. 27, 2015) (plaintiff who was expelled mid-semester did not establish irreparable harm from interruption in coursework where he could complete his courses at another accredited university); *Doe v. Vassar College*, 2019 WL 6222918, *6 (quoting *Phillips v. Marsh*, 687 F.2d 620, 624 (2d Cir. 1982) (Winter, J., concurring) (finding that even if the plaintiff did need to re-take courses that would not establish irreparable harm because "'[t]here are no lack

of colleges or universities [h]e might attend if all that is at stake is loss of instruction time.'").

Similarly, Plaintiff's contention that his future employment opportunities will be impacted are riddled with assumptions—that a potential employer will (1) obtain his academic record and (2) not give him the opportunity to explain any sexual misconduct reference. Plaintiff has not identified any employer that withdrew an offer of employment or that was waiting for him to graduate. *Vassar College*, at *6 ("Plaintiff's broad assertion that he will be harmed by having to explain his suspension to employers . . . is too speculative to warrant injunctive relief, since he has identified no plans to . . . pursue any specific career . . . "); *see also Montague*, 2017 WL 4942772, at *4 (finding that the plaintiff did not allege irreparable harm from the possibility of decreased employment opportunities); *see also Doe v. Louis. St. Univ.*, No. 3:20-379 7/21/20 (finding that the need to potentially explain a gap in his educational career was too speculative).

Not only is this entirely speculative, it is also legally improbable.  Plaintiff's records are protected from disclosure without his consent by the Family Educational Rights and Privacy Act.  Thus, Plaintiff would have to consent to any prospective employer receiving a copy of his full academic record.  *Vassar Coll.*, 2019 WL 6222918, at *6 (citing *Medlock*, 2011 WL 4068453, at *9, noting, in finding that plaintiff did not establish irreparable harm, that plaintiff's suspension "will not be

permanently noted on his academic transcript" since the record of suspension is maintained in a confidential file protected by the FERPA and obtainable only with plaintiff's consent).

For the same reason, Plaintiff's contention that he will suffer reputational harm is also too speculative. *See Doe v. Princeton*, 2020 WL 2097991, at *7; *Doe v. University of Sciences*, 2020 WL 5211028, *4; *Doe v. Louis. St. Univ.*, No. 3:20-379 7/21/20. Plaintiff places much emphasis on the Fifth Circuit's decision in *Plummer v. University of Houston* (Doc. 4, pp. 20-21). But this decision was not a decision involving a preliminary injunction. Rather, the case was decided on summary judgment, and the Fifth Circuit affirmed the lower court's summary judgment for the university, finding that the disciplinary proceedings did not violate the plaintiff's due process rights, even though a purported stigma as a sex offender could be a harsh penalty.

Put simply, Plaintiff cannot establish that he will suffer irreparable harm, and this Court must not issue the extraordinary remedy of a preliminary injunction based upon his speculative injuries. *See Montague v. Yale Univ.*, No. 3:16-cv-00885, 2017 WL 4942772, at *4 (D. Conn. March 8, 2017) (college basketball player who was found to have violated Yale's sexual misconduct policy and was expelled as a consequence did not allege irreparable harm from delay in completing his education and not graduating with his contemporaries, and the possibility of decreased

24

employment opportunities); *Doe v. Louisiana St. Univ.*, 2020 WL 4193473, *7 (M.D. La. Jul. 21, 2020) (holding that plaintiff's damages were "far too speculative to constitute an irreparable harm" because it was not certain that the plaintiff would be branded a sexual predator or that he would someday have to explain a gap in his educational record and plaintiff was only suspended, not expelled); *Hodges v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. CV 20-1456, 2020 WL 5017665, at *4 (E.D. La. Aug. 25, 2020) (collecting cases).

### D. <u>Plaintiff Cannot Establish That Any Threatened Injury Outweighs The Harm An Injunction Would Cause Samford.</u>

Plaintiff asks this Court to overturn discipline and immediately reinstate him to Samford's campus. Essentially, Plaintiff is asking that this Court pretend like the incident never happened. In doing so, Plaintiff suggests that that "no great hardship would be imposed" on Samford. But this overlooks Samford's obligation to police itself and protect its entire student population, not to mention Jane Roe who asserts that she was sexually assaulted by Plaintiff. *See Doe v. Galster*, 768 F.3d 611, 621 (7th Cir. 2014) ("[f]ederal law gives school officials wide discretion in making disciplinary decisions, especially as they have to balance the interests of all concerned."). After a full hearing before a panel of Samford community members not involved in the investigation (Doc. 1 ¶ 165, Doc 1-1, pp. 34-35) and at which he was represented by his current counsel, Plaintiff was found responsible for an egregious sexual assault on a minor student. An entirely separate appeals panel

affirmed the hearing panel's decision. (Doc. 1, ¶ 187). And John Doe has admitted in his complaint that he provided alcoholic beverages to a minor Samford student. (Doc. 1, ¶¶ 71-73, 78-81). Samford's interests in maintaining a safe campus, protecting its students from unlawful and unsafe conduct, maintaining discipline and complying with Title IX of the Education Amendments of 1972 to prevent and remedy sexual misconduct far exceed the harm that would result to Plaintiff in waiting until the expiration of his suspension or the final adjudication of this case to return to Samford's campus.

Plaintiff's litigation tactics demonstrate that he continues to be a risk to Jane Roe and others on campus. Those tactics compel the conclusion that Samford is justified in suspending him from matriculating for a period in which he can demonstrate some growth in personal conduct and responsibility. First, Plaintiff had the opportunity to file a barebones complaint alleging his causes of action and offering to file detailed information about his particular objections to the Title IX investigation under seal.[6] Instead, Plaintiff filed 45 paragraphs of unnecessary, salacious details including gratuitous sexual commentary concerning the conduct of himself and a minor student, such as a discussion of whether he had an orgasm or

---

[6] The procedures for filing a document under seal in this District are available in the Civil Administrative Procedures Manual for CM/ECF  **revised 5/18/2018, at https://www.alnd.uscourts.gov/sites/alnd/files/AL-N%20Civil%20Administrative%20Procedures%20Manual.Revision.05-18-2021.pdf

not, and injuries to the minor female's breasts and lips. (Doc. 1, ¶ ¶ 70-115). This demonstration of his disregard for the wellbeing of the non-party complainant is astonishing.

Second, Doe's manner of pleading unnecessary factual allegations almost guaranteed that the press would quickly pick up the story seeking to litigate his complaints in a discreet and quiet manner designed to protect the identity and reputation of himself and the minor female complainant. Doe cries crocodile tears about reputational harm (Doc. 4, pp 22-23) while simultaneously gratuitously and unnecessarily disclosing personal information in a public document not only about himself (*see*, Doc. 1, ¶ 150) ("John submitted evidence about his ADHD and PDD-NOS, which is high functioning autism."), but also about the minor complainant. This behavior casts doubt on his sincerity, shows contempt for the legal process and indifference toward the privacy of the complainant.

Third, Doe and his counsel's superfluous and graphic complaint allegations violate confidentiality agreements between Samford and each of them. On January 15, 2021, Plaintiff signed a confidentiality agreement in which he agreed not to disclose Confidential Information concerning the Title IX investigation to third parties or the public. (See Exhibit 1 attached hereto – redacted to remove the name of the plaintiff). Confidential information was defined to include, without limitation, "documentary and electronic evidence obtained by the University in the course of

an investigation, a Written Response Statement, a Written Rebuttal Statement, preliminary and final Investigation Reports, an Adjudication File, a Notice of Determination, an Appeal Statement, a Notice of Appeal, an Appeal Response, an Appeal File, and a Written Decision of Appeal Panel." (*Id.*) The Confidentiality Agreement requires: "Among other things, a Complainant and a Respondent are to maintain the privacy of all Confidential Information shared with them by an investigator, the Title IX Coordinator or a Hearing Panel. Such Confidential Information may not be shared with third parties, disclosed publicly, or used for purposes not specifically authorized in writing by the Title IX Coordinator. If Confidential Information is requested from a Complainant or Respondent, they should refer such requests to the Title IX Coordinator." *Id.* Plaintiff's gratuitous pleading contravenes the terms of the Confidentiality Agreement, demonstrating that his pleading purpose is not only to obtain injunctive relief, but to seek vengeance on the complaining party.

On February 10, 2021, Plaintiff's counsel Kristina Supler and Susan C. Stone each signed an "Advisor Agreement" agreeing to certain restrictions in order to be allowed to serve as an advisor to the Plaintiff. (See Exhibits 2 and 3 attached hereto – redacted to remove the name of the plaintiff). The Agreements contained, among other items, the following confidentiality restrictions:

> The role of an advisor is confidential. An advisor may not disclose to
> any person other than the advisor's respective advisee any information

or documentation obtained in the grievance process. Among other things, advisors are to maintain the privacy of all documents and other information shared with them by an investigator or the Title IX Coordinator. Such documents and information may not be shared with third parties, disclosed publicly, or used for purposes not specifically authorized by Title IX Coordinator.

(Exhibits 2 and 3, p. 2). The complaint unnecessarily and publicly discloses precisely the information that both Doe and counsel agreed to maintain confidential. The following paragraphs of the complaint contain information obtained by counsel during the grievance process in violation of their Advisor Agreements: Paragraphs 116, 117, 125, 126, 127, 128, 129, 129, 131, 132, 134, 135, 136, 137, 138, 140, 141, 143, 144, 145, 146, 147, 148, 149, 151, 152, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 179, 180, 182, 183, 187, 188, 189, 190 and 191. Many of those allegations not only violated the Advisor agreements, but are unnecessary and unfairly embarrassing to the complainant, a non-party with no opportunity to defend herself in this case. This flagrant behavior by Doe and his counsel shows contempt for Samford's Title IX process as well as disregard for the welfare of the complainant and future complainants who may be fearful of reporting policy violations for concerns of unnecessary publicity. Samford does not suggest that the confidentiality agreements preclude Plaintiff from suing Samford or using confidential information in this action. Samford contends, however, that the information could have been presented to the court in a discreet and private fashion with due concern for the

complainant who has no opportunity to protect her privacy as a non-party to this action.

"[O]ne who seek[s] equity must do equity and one that comes into equity must come with clean hands." *J & M Bail Bonding Co. v. Hayes*, 748 So. 2d 198, 199 (Ala. 1999) (internal citations omitted) "The purpose of the clean hands doctrine is to prevent a party from asserting his, her, or its rights under the law when that party's own wrongful conduct renders the assertion of such legal rights 'contrary to equity and good conscience." *Id.* (*citing Draughon v. General Fin. Credit Corp.*, 362 So.2d 880, 884 (Ala. 1978)). This court has applied this universal principle to refuse equitable relief to claimants who engage in litigation misconduct such as unscrupulous practices, overreaching, taking undue advantage of his position, or other unconscientious conduct. *See*, *Vakili v. First Com. Bank*, No. 2:08-CV-276-VEH, 2009 WL 10670148, at *15-16 (N.D. Ala. Aug. 13, 2009). Samford asks the court to deny equitable relief to Plaintiff due to his continued disregard for the confidentiality of the Title IX process and the welfare of persons in addition to himself.

Finally, denying Plaintiff's motion does not leave him without recourse.  By filing a complaint, Plaintiff has the opportunity to test the sufficiency of his claims through the general litigation process.

### E.   Plaintiff Has Failed To Show That Public Interest Will Not Be Disserved By A Grant Of The Preliminary Injunction.

Plaintiff contends that the public has an interest in ensuring that educational institutions follow proper procedure and that an individual's reputation is not baselessly degraded due to false allegations of sexual misconduct.   Beyond Plaintiff's lack of authority, the public interest weighs even heavier in favor of denying Plaintiff's Motion.

Indeed, the Supreme Court has explicitly recognized that an educational institution's need to have broad discretionary authority, particularly with respect to maintaining discipline and order, is in the public's interest.  *See Goss v. Lopez*, 419 US 565, 590 (1975).  A college's ability to conduct these matters would be thwarted if a student could reverse, through an injunction, the sanctions imposed on him/her for violation of school policies simply because the student is dissatisfied. Accordingly, granting the injunction will disserve the public.  Requiring Samford to reinstate a student who (1) acknowledges in his Complaint providing alcohol to an underage student; (2) has been found responsible for an egregious sexual assault, and whose appeal to an appellate panel has been rejected, and (3) engages in sharp and unnecessary litigation practices that continue harm to the person who complained about his behavior would irreparably harm Samford and the Samford University community.

31

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request this Honorable

Court deny Plaintiff's Motion.

This the 20th day of July, 2021.

Respectfully submitted,

*/s/ James C. Pennington*
James C. Pennington (ASB-1287-N62J)
Amy Quick Glenos (ASB-2345-C66A)
OGLETREE, DEAKINS, NASH, SMOAK
        & STEWART, P.C.
420 20th Street North, Suite 1900
Birmingham, AL 35203
Telephone: 205.328.1900
Facsimile: 205.328.6000
james.pennington@ogletree.com
amy.glenos@ogletree.com
*Attorneys for Defendant Samford University,*
*Mallory Kruntorad, and Tim S. Hebson,*
*Ed.D.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certified that on the 20th day of July, 2021, I e-filed the foregoing

via the Court's CM/ECF system which will automatically send notification of such

filing to the following counsel of record:

| | |
|---|---|
| Bret H. Knight | Susan C. Stone |
| JAFFE, HANLE, WHISONANT & KNIGHT, | Kristina W. Supler |
| P.C. | KOHRMAN JACKSON & KRANTZ, LLP |
| 2320 Arlington Avenue, South | 1375 E. 9th Street, 29th Floor |
| Birmingham, AL 35203 | Cleveland, OH 44114 |
| bknight@rfajjelaw.com | scs@kjk.com |
| | kws@kjk.com |

/s/ James C. Pennington
Of Counsel